# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**RONNIE B. HOWARD,**

    **Plaintiff,**

  v.                                                                      Case No. 18-CV-156

**ANDREW SAUL,**
**Commissioner of Social Security,**

    **Defendant.**

---

## DECISION AND ORDER

---

Ronnie B. Howard seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying his claim for a period of disability and disability insurance benefits and for supplemental security income under the Social Security Act, 42 U.S.C. § 405(g). For the reasons below, the Commissioner's decision is affirmed.

## BACKGROUND

Howard filed an application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income on July 31, 2013. (Tr. 25.) Howard alleges disability beginning on June 7, 2013, due to a back disorder, depression, carpal tunnel syndrome, diabetes mellitus, and hypertension. (Tr. 32.) Howard's applications were denied initially and upon reconsideration. (Tr. 25.) Howard filed a request for a hearing and a hearing was held before an Administrative Law Judge on September 19, 2016. (Tr. 44–97.) Howard testified at the hearing, as did James J. Radke, a vocational expert. (*Id.* at 44.)

In a written decision issued November 29, 2016, the ALJ found that Howard had the severe impairment of disorders of the back. (Tr. 27.) The ALJ further found that Howard did

not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "listings"). (Tr. 31.) The ALJ found Howard had the residual functional capacity ("RFC") to perform light work, with the following limitations: never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs, stoop, kneel, crouch, or crawl; never work at unprotected heights; and will be off-task less than ten percent of the time in an eight-hour workday in addition to normal breaks. (*Id.*)

The ALJ found that Howard could perform his past relevant work as a school cafeteria cook. (Tr. 37.) As such, the ALJ found that Howard was not disabled from his alleged onset date until the date of the decision. (Tr. 38.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied the plaintiff's request for review. (Tr. 11–15.)

**DISCUSSION**

*1.     Applicable Legal Standards*

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (internal quotation and citation omitted). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v.*

*Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

### 2. *Application to this Case*

Howard argues that the ALJ erred by: (1) improperly weighing the opinion evidence in the record; (2) finding his depression non-severe; (3) improperly discounting Howard's subjective symptoms; (4) failing to properly consider Howard's obesity; and (5) finding that Howard could return to his past work as a school cafeteria cook. I will address each argument in turn.

#### 2.1 Weight Given to Opinion Evidence in the Record

Howard argues that the ALJ erred by assigning little weight to the opinion of Howard's treating primary care physician, Dr. Benjamin Tobin, and to the assessments in the treatment notes of Howard's treating physician, Dr. Vance Masci (a specialist in occupational medicine). Howard further argues that the ALJ erred in assigning great weight to the State Agency consultants' opinions.

An ALJ must consider all medical opinions in the record, but the method of evaluation varies depending on the source. Generally, more weight is given to the medical opinions of treating sources. 20 C.F.R. § 404.1527(c)(2).[1] If the opinion of a treating source is well-

---

[1] On January 18, 2017, the SSA published the final rules entitled "Revisions to Rules Regarding the Evaluation of Medical Evidence" in the Federal Register (82 FR 5844). The final rules became effective on March 27, 2017. For claims filed before March 27, 2017, however, the SSA continues to apply the prior rules that were in effect

3

supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record, the opinion is given "controlling weight." *Id.* Even if the ALJ finds that the opinion is not entitled to controlling weight, he may not simply reject it. Social Security Ruling ("SSR") 96-2p. Rather, if the ALJ finds that a treating source opinion does not meet the standard for controlling weight, he must evaluate the opinion's weight by considering a variety of factors, including the length, nature and extent of the claimant and physician's treatment relationship; the degree to which the opinion is supported by the evidence; the opinion's consistency with the record as a whole; and whether the doctor is a specialist. 20 C.F.R. § 404.1527(c).

The ALJ must always give good reasons for the weight given to a treating physician's opinion. 20 C.F.R. § 404.1527(c)(2); SSR 96-2p. The ALJ must give reasons "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p. An ALJ can reject a treating physician's opinion only for reasons supported by substantial evidence in the record. *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003).

Howard treated with his primary care physician, Dr. Tobin, throughout the relevant period for a myriad of conditions. Dr. Tobin completed a physical RFC assessment form on April 19, 2016. (Tr. 602–06.) Dr. Tobin explained that all of his opinions were only his "best estimates." (*Id.*) He opined that Howard's depression affected his physical condition and that his pain would frequently interfere with his attention and concentration during a typical

---

at the time of the ALJ's decision. https://www.ssa.gov/disability/professionals/bluebook/revisions-rules.html (last visited Aug. 26, 2019).

Further, the regulations governing the evaluation of disability for disability insurance benefits and SSI are nearly identical; thus, I will generally refer to the regulations for disability insurance benefits found at 20 C.F.R. § 404.1520, *et seq.* for ease of reference.

4

workday. (Tr. 603.) Dr. Tobin opined that Howard could not walk any city blocks without rest or severe pain, could sit for thirty minutes at one time before needing to get up and could stand for twenty minutes at a time before needing to change positions. (*Id.*) He opined that Howard could stand/walk for a total of less than two hours in an eight-hour workday and could sit for about two hours total in an eight-hour workday. (Tr. 604.)

Dr. Tobin further opined that Howard would need to walk around approximately every twenty to thirty minutes for ten minutes at a time and would need a job that permits shifting positions at will. (*Id.*) Dr. Tobin opined that Howard would need to take unscheduled breaks every one to two hours for fifteen minutes. (*Id.*) Dr. Tobin opined that Howard would occasionally need to use a cane and could never lift twenty pounds or more. (*Id.*) He opined that Howard could never climb ladders and could rarely stoop, crouch, twist, and climb stairs. (Tr. 605.) He stated that Howard would likely have "good days" and "bad days" and would miss more than four days per month of work due to his impairments or treatment. (*Id.*)

The ALJ acknowledged that Dr. Tobin was Howard's primary care provider, that Howard treated with him since before his alleged onset date, and that Dr. Tobin saw Howard every one to three months for follow-up appointments. (Tr. 35.) However, the ALJ assigned little weight to Dr. Tobin's opinion, finding it was not entirely consistent with his progress notes, which showed that Howard typically exhibited some good function during physical examinations. (*Id.*) The ALJ also found the opinion somewhat inconsistent with Howard's employment history because the evidence showed that he worked as a school cafeteria cook until April 2015 and the position required a lot of standing. (*Id.*) The ALJ also found that the opinion was not entirely supported by the records of Dr. Rao, a surgeon who examined Howard shortly before the onset date. (*Id.*)

5

Howard argues that the ALJ impermissibly "cherry picked" Dr. Tobin's records, citing only those records showing good functioning and ignoring those records showing back pain and tenderness to palpation, occasional numbness and tingling, and weakness in the left lower extremity, particularly with knee flexion. (Pl.'s Br. at 9, Docket # 25.) That is simply not the case. The ALJ cited multiple provider records, including those from Dr. Tobin, that showed Howard reported back pain as well as stiffness, numbness, and pain in the left leg; that the pain increased with prolonged standing or sitting; and worsening thoracolumbar pain with radiation into both lower extremities. (Tr. 33.) The ALJ also cited medical appointments where Howard exhibited abnormalities upon physical examination, including spasm, tenderness, decreased range of motion, positive straight leg raising, and an antalgic gait. (*Id.*) Contrary to Howard's assertion, the ALJ specifically cited to Dr. Tobin's February 2016 examination showing weakness in the left lower extremity, particularly on knee flexion. (Tr. 34.) The ALJ considered this evidence and accommodated Howard's associated limitations in the RFC. (*Id.*) Howard fails to show "objective deficits consistent with Dr. Tobin's RFC not acknowledged by the ALJ." (Pl.'s Br. at 10.)

Howard also faults the ALJ for finding his ability to work as a cook until April 2015 inconsistent with Dr. Tobin's opinion. (*Id.*) The ALJ found that Dr. Tobin's opinion was "somewhat inconsistent" with Howard's work history because the evidence showed that Howard could work as a cook until April 2015 and the position required a lot of standing. (Tr. 35.) Howard argues that the ALJ ignores the fact that his work as a cook was accommodated and the ALJ should not consider part-time work as evidence of the ability to engage in full-time work. (Pl.'s Br. at 10.)

6

As an initial matter, it is a bit unclear whether Howard only engaged in part-time work during the relevant time period. Howard testified that he worked twenty hours per week from 2010 through 2012 (Tr. 55) and twenty-five hours per week as a school cafeteria cook prior to June 2013 (Tr. 58). Howard testified that in June 2013, he began working twenty hours per week. (Tr. 58.) Howard testified that the reduction in hours after his onset date was the result of being offered less hours by his employer, not because of his alleged disability, though he found it a welcome coincidence because his alleged impairments were "beginning to affect [him]" and he "was in need of less hours" as a result. (Tr. 58–61.) However, Howard frequently told Dr. Masci throughout 2013 (including in July 2013) that he worked forty-five hours per week, though he was having difficulties with the hours. (Tr. 468, 469, 471, 473, 475.)

Even assuming Howard worked only twenty-hours per week, as he testified, Howard has not demonstrated that the ALJ erred in finding his ability to stand while working as a cook "somewhat inconsistent" with Dr. Tobin's opinion. While it is true that working, in and of itself, does not discount disability, *see Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005) ("A person can be totally disabled for purposes of entitlement to social security benefits even if, because of an indulgent employer or circumstances of desperation, he is in fact working."), the ALJ is not finding Howard not disabled simply because he worked part-time as a cook. Rather, his ability to stand while working was one factor, among many, he used to discount Dr. Tobin's opinion. Howard's supervisor completed a work activity questionnaire in which he stated that Howard was given more breaks/rest periods and worked at an 80% rate of productivity; however, he also stated that Howard could complete all the usual duties required for his positions without special assistance. (Tr. 350–51.) He did not say Howard could not

7

stand for the required number of hours needed to do the job. Howard testified that in a five-hour shift, he would stand for two and a half hours and sit for two and a half hours. (Tr. 56.) Thus, Howard's own testimony is inconsistent with Dr. Tobin's opinion. Dr. Tobin opined Howard could stand less than two hours in an eight-hour work day (Tr. 604), while Howard testified he stood fifty percent of the time (Tr. 56). Even assuming a four-hour shift, Howard could stand two hours. It is unclear how the ALJ erred by finding Howard's testimony regarding his ability to stand "somewhat inconsistent" with Dr. Tobin's opinion when the testimony *is* somewhat inconsistent with Dr. Tobin's opinion.

Howard also takes issue with the ALJ's finding that Dr. Tobin's opinion was "not entirely supported" by the records of Dr. Rao, who examined Howard shortly before his alleged onset date. (Tr. 35.) The ALJ noted that Dr. Rao's records showed Howard's fusion was stable, his stenosis was not severe, he exhibited some good function such as normal gait, and he should be treated with fairly conservative measures such as medication on an occasional basis for flare-ups. (*Id.*) Howard argues that the ALJ does not give a "full summary" of Dr. Rao's assessment because Dr. Rao also noted Howard had "moderate stenosis at L3-4 with a grade 1 slip and left leg radiculopathy" and stated that the results of surgery would be difficult to predict given Howard's prior operations and comorbidities. (Pl.'s Br. at 10–11.) Howard does not point to any evidence in the record that contradicts the ALJ's rationale for finding Dr. Tobin's opinion "not entirely supported" by Dr. Rao's records. Dr. Rao's examination did exhibit normal functioning, such as functional range of motion without marked limitation of pain in the lower extremities, no overt motor or sensory deficits, motor strength grossly symmetric bilaterally, and negative straight leg raise. (Tr. 440.) While Dr. Rao did note that Howard's deep tendon reflexes were diminished bilaterally at the knees

8

and ankles (Tr. 440), this is why the ALJ found Howard exhibit "some good function," (Tr. 35), not completely normal function. While Howard argues the ALJ ignored the fact that Dr. Rao found moderate stenosis at L3-4 when he stated that Howard's stenosis was "not severe," (Pl.'s Br. at 10), this is the *exact* assessment given by Dr. Rao: "His degree of stenosis is not severe. I would rate the stenosis as moderate at the L3-4 level" (Tr. 440). Also, Dr. Rao's statement that Howard did not wish to pursue surgery at that time and that the results of surgery would be difficult to predict because of his prior surgeries and comorbidities (Tr. 440) does not contradict the fact that Dr. Rao believed conservative treatment (such as weight loss, occasional over-the-counter or prescription medication for flare-ups, and consideration of epidural steroid injections) was appropriate (*id.*). Howard has not shown that the ALJ erred in the weight assigned to Dr. Tobin's opinion.

Howard further argues the ALJ erred in assigning little weight to Dr. Masci's assessments in his treatment notes. (Pl.'s Br. at 11.) Dr. Masci did not render a formal opinion; however, the ALJ considered the fact that Dr. Masci provided treatment to Howard at numerous appointments during the relevant period and found that Howard could not return to work as a welder and could return to work as a cook and security guard "as tolerated." (Tr. 36.) The ALJ gave little weight to those statements. As to Dr. Masci's statement that Howard could "return to work as tolerated," the ALJ found the opinion vague and that it did not provide a clear picture of his ability to engage in work-related activities. As to Dr. Masci's assessment that Howard could not return to work as a welder, the ALJ found that it was conclusory in nature and did not fully address the issues relevant to the analysis, such as Howard's general work-related abilities. (*Id.*) Howard generally argues that the ALJ erred in

9

this assessment and argues that if the ALJ thought Dr. Masci's statements were unclear, then he should have contacted him for clarification. (Pl.'s Br. at 11.)

It is unclear why the weight given to these statements even matters to the ALJ's conclusion. As to the opinion on Howard's ability to weld, the ALJ did not find Howard could perform his past work as a welder. (Tr. 38.) As to the ALJ's finding that "return to work as tolerated" is vague, Howard cites to *Garcia v. Colvin*, 741 F.3d 758, 760 (7th Cir. 2013) in support for his argument that the ALJ should have contacted Dr. Masci to clarify his "vague" statement. In *Garcia*, the claimant's doctor provided a letter stating that "Mr. Garcia will be unable to return to any form of employment." *Id.* The court found that while the ALJ was not bound by the statement in the letter, because "a doctor may not be acquainted with the full range of jobs that a person with Garcia's ailments could fill, the administrative law judge, if he thought this a possibility, should have asked the doctor to specify more exactly what 'functions' Garcia is incapable of performing." *Id.* But Dr. Masci makes a very different statement. He does not opine that Howard is incapable of any form of work; rather, he opines that Howard *can* return to work. While "as tolerated" might not be completely clear, the fact Dr. Masci believes Howard capable of returning to his present employment does not help Howard's cause.

Finally, Howard argues the ALJ erred in assigning great weight to the State Agency consultants' opinions because the doctors failed to review "critical records" from Dr. Rao showing the results of his most recent imaging and the records showing abnormal findings, such as reduced range of motion, straight leg raise, stiffness, spasm and tenderness, and weakness. (Pl.'s Br. at 11.) But the ALJ only assigned "great weight" to the consultants' conclusion that Howard could perform light work. (Tr. 36.) The ALJ rejected the portion of

10

the consultants' opinions regarding non-exertional limitations and explained why he was assigning greater restrictions than those opined by the consultants. (*Id.*) Again, Howard cannot show that the ALJ erred.

For these reasons, Howard has not shown the ALJ erred in his assessment of the opinion evidence.

### 2.2 Finding Mental Impairments Non-Severe

Howard argues the ALJ erred in finding his mental impairments non-severe. (Pl.'s Reply Br. at 5, Docket # 33.) For an impairment to be considered "severe" at step two of the five-step analysis, the impairment must "significantly limit an individual's ability to perform basic work activities." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). "If the evidence indicates that an impairment is a slight abnormality that has no more than a minimal effect on an individual's ability to work, then it is not considered severe." *Id.* The ALJ considered Howard's mental health impairments, noting he was diagnosed with depression and anxiety in late 2015 by Dr. Tobin, was prescribed Lexapro, saw a counselor for ten sessions, and was voluntarily admitted for inpatient mental health treatment in December 2015. (Tr. 28–29.) The ALJ considered the treatment records of Dr. Michael Bohn from December 2015, when Howard was admitted for inpatient treatment. (Tr. 30.) Considering all this evidence, the ALJ found only mild limitations in activities of daily living, social functioning, and concentration, persistence, or pace and concluded that his mental impairments were non-severe. (*Id.*) Because the ALJ must consider both severe and non-severe impairments when assessing RFC, *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008), the ALJ also specifically found that the evidence did not support a finding of any additional functional limitations (Tr. 31).

Howard does not point to any evidence in the record that the ALJ did not consider. (Pl.'s Reply Br. at 5.)

The ALJ's assessment is well-supported by the record. When Howard was voluntarily admitted for inpatient care in December 2015, Dr. Bohn noted that Howard did not have any mental health problems until four months prior to his admission. (Tr. 639.) His highest GAF in the past year was 75, indicating "transient" symptoms.[2] (Tr. 647.) While his GAF on discharge was 48–52, indicating serious to moderate symptoms, Dr. Bohn also found that Howard could return to work with the "only restrictions" being to follow doctor's orders and attend follow-up appointments. (Tr. 658.) In February 2016, Howard "denie[d] any current feeling of depression," but had "intermittent depressive episodes" and "occasional anxiety 'when I let my mind wander.'" (Tr. 733.) Howard testified that he was not currently in counseling for depression (Tr. 77), and while he would like to start it up again, he has not "done [his] part as far as pursuing it" (Tr. 87). For these reasons, Howard has not shown the ALJ erred in finding his mental impairments non-severe.

2.3     Consideration of Subjective Complaints

Howard argues the ALJ erred in not fully crediting his subjective complaints, relying too heavily on the objective evidence to discount his allegations of disabling symptoms. (Pl.'s Br. at 12–14.) The Commissioner's regulations set forth a two-step test for evaluating the

---

[2] GAF stands for global assessment functioning. GAF is measured on a 0–100 scale, with scores of 41–50 indicating serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job), *see Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) (citing American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") (4th ed. 2000)), and scores of 51–60 reflecting "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) [or] moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)," *Jelinek v. Astrue*, 662 F.3d 805, 807 n.1 (7th Cir. 2011). A GAF score of 71 to 80 indicates "transient" symptoms and "expectable reactions to psychosocial stressors," and "no more than slight impairment in social, occupational, or school functioning." *Czarnecki v. Colvin*, 595 F. App'x 635, 638 n.2 (7th Cir. 2015). The Fifth Edition of the DSM, published in 2013, abandoned the GAF scale. *Williams*, 757 F.3d at 613.

credibility of a claimant's statements regarding his symptoms. First, the ALJ must determine whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. SSR 16-3p. Second, if the claimant has such an impairment, the ALJ must evaluate the intensity and persistence of the symptoms to determine the extent to which they limit the claimant's ability to work. *Id.* If the statements are not substantiated by objective medical evidence, the ALJ must evaluate the intensity, persistence, and limiting effects of the alleged symptoms based on the entire record and considering a variety of factors, including the claimant's daily activities; the location, duration, frequency, and intensity of the symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the claimant takes; treatment, other than medication, used for relief of the symptoms; other measures the claimant uses to relieve the symptoms; and any other factors concerning the claimant's functional limitations due to the symptoms. *Id.* While an ALJ "may discount subjective complaints of pain that are inconsistent with the evidence as a whole . . . the ALJ may not disregard subjective complaints merely because they are not fully supported by objective medical evidence." *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995). The lack of objective medical evidence is merely one factor to consider, along with the other factors listed in SSR 16-3p. *Id.*

Howard argues that the ALJ discounted his allegations of disabling symptoms based on the medical evidence alone. (Pl.'s Br. at 14.) That is not supported by the record. The ALJ properly followed the two-step analysis set forth in SSR 16-3p for evaluating Howard's subjective complaints. The ALJ first looked at the medical evidence and found that it documented Howard's disorders of the back (Tr. 33); however, the ALJ further found,

13

"consider[ing] the overall record including the objective medical evidence, [Howard's] subjective complaints, and the medical opinions," that Howard could perform a range of light work, as described in the RFC (Tr. 35). In evaluating Howard's subjective complaints, he found that Howard responded to conservative treatment measures such as heat, lidocaine ointment, oxycodone, and stretching. (Tr. 34.) The ALJ found he could perform the daily activities of driving, applying for jobs, using a computer, and caring for his children, despite his alleged disabling symptoms. (Tr. 32.) The ALJ considered the fact that Howard worked as a school cafeteria cook until April 2015 and that the position required a lot of standing, per Howard's own testimony. (Tr. 35.)

While Howard did indeed testify that his position as a cook required a lot of standing (at least fifty percent of the shift), as stated earlier, the ability to work is not the strongest evidence to rely on because one might continue to work despite disability because of extenuating circumstances. *See Gentle*, 430 F.3d at 867. Howard indicated on several occasions that he continued to work due to financial need. (Tr. 473, 714.) However, I find the ALJ sufficiently supported his finding, even without considering Howard's employment. The ALJ clearly explained that because Howard reported symptoms of pain, he accommodated him by restricting him to time off-task during the workday. (Tr. 36.) The ALJ properly considered the factors of SSR 16-3p and complied with the regulation. Howard has not demonstrated that the ALJ erred in this regard.

    2.4    Obesity

Howard argues that the ALJ failed to consider his obesity in assessing his RFC. (Pl.'s Br. at 14–15.) The ALJ found Howard's obesity to be non-severe. (Tr. 28.) Again, an ALJ must consider the effects of both severe and non-severe impairments in assessing one's RFC.

However, the ALJ did do this. The ALJ found that while the record showed Howard was obese, there was "no evidence of any quantifiable impact of [Howard's] obesity on his pulmonary, musculoskeletal, endocrine, or cardiac functioning." (Tr. 28.) Beyond generally arguing that obesity must adversely impact his functioning (Pl.'s Reply Br. at 9), Howard cannot point to any evidence suggesting that his obesity exacerbated his physical symptoms. Thus, he cannot show the ALJ erred in this regard. *See Prochaska v. Barnhart*, 454 F.3d 731, 737 (7th Cir. 2006) (internal citation omitted) ("Because [claimant] failed to 'specify how [her] obesity further impaired [her] ability to work,' and because the record relied upon by the ALJ sufficiently analyzes her obesity, any error on the ALJ's part was harmless.").

2.5  Return to Past Relevant Work

Finally, Howard argues that the ALJ erred in finding him able to return to his past relevant work as a school cafeteria cook, when the ALJ acknowledged that Howard received accommodations at his job. (Pl.'s Br. at 15–16.) In finding that Howard could return to his past relevant work as a cook, the ALJ noted that Howard received special accommodations while working as a cook after he filed for disability in August 2013. (Tr. 37.) However, the ALJ found that while Howard was accommodated after he filed for disability in August 2013, he could work at the level of substantial gainful activity from 2010 through 2012 without accommodations. (Tr. 37–38.)

Howard argues that there is an unexplained inconsistency between the ALJ acknowledging that he received special accommodations while working as a cook after he filed for disability in August 2013, yet finding him capable of performing his work as a cook as actually performed. (Tr. 37–38.) Howard argues that his job as a cook, as actually performed, was not for a full eight hours per day five days per week and was otherwise

15

substantially accommodated. (Pl.'s Reply Br. at 9.) Again, Howard's supervisor completed a work activity questionnaire in which he stated that Howard was given more breaks/rest periods and worked at an 80% rate of productivity. (Tr. 350–51.) While the ALJ did provide Howard the restriction of being off-task less than ten percent of the time in additional to normal breaks (Tr. 31), I agree that it is not entirely clear whether the ALJ was rejecting or accepting the specific accommodations provided by his employer when he found Howard capable of performing his past work as it was actually performed. (Tr. 38.)

Most importantly, however, even assuming the ALJ erred in finding Howard able to perform his past relevant work as a school cafeteria cook as actually performed, the VE testified as to other jobs in significant numbers in the national economy Howard could perform given the RFC stated in the decision. (Tr. 91–92.) Thus, any error on the ALJ's part is harmless because it would not change the outcome. *See Keys v. Barnhart*, 347 F.3d 990, 994–95 (7th Cir. 2003). For these reasons, any error in this regard does not warrant remand.

## CONCLUSION

Howard argues that the ALJ erred by (1) improperly weighing the opinion evidence in the record; (2) finding his depression non-severe; (3) improperly discounting Howard's subjective symptoms; (4) failing to properly consider Howard's obesity; and (5) finding that Howard could return to his past work as a school cafeteria cook. I find the ALJ did not err and the decision is supported by substantial evidence. Therefore, the Commissioner's decision is affirmed.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the Commissioner's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 27th day of August, 2019.

BY THE COURT

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge